# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LADARRIUS HOSKINS,

    Plaintiff,

v.              Case No. 23-CV-346

JENNA HILAND, *et al.*,

    Defendants.

## DECISION AND ORDER

   Plaintiff LaDarrius Hoskins, who is representing himself and currently confined at Green Bay Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Hoskins was allowed to proceed on a claim against defendants Jenna Hiland, Ethan Stark, Ashley Haseleu, Jacob Gripentrog, Angelia Kroll, and Christopher Schawb, all members of the Special Needs Committee, for alleged deliberate indifference to Hoskins's tendency to black out. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 20.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 6, 12.)

## PRELIMINARY MATTERS

   The defendants argue that Hoskins failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to their motion for summary judgment, failing to dispute their proposed findings of fact or submit any of his own. (ECF No. 21 at 2-3.) District courts are entitled to construe *pro se* submissions leniently and may

overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Hoskins did not formally respond to the defendants' proposed findings of facts, he contests them within his brief in response to their motion. Hoskins also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Hoskins's submissions where appropriate in deciding defendants' motion.

**FACTS**

At all times relevant, Hoskins was incarcerated at Waupun Correctional Institution. (ECF No. 22, ¶ 1.) The defendants were all officers or staff members at Waupun, serving on the Special Needs Committee (SNC). (*Id.*, ¶¶ 2, 20.) The SNC reviews and decides prisoners' requests for accommodations for medical needs. (*Id.*, ¶ 7.) Defendant Haseleu, in her role as Health Services Manager, was the medical advisor on the SNC, and the other five defendants were non-medical staff members or officers. (*Id.*, ¶ 17-20.)

On January 4, 2023, Hoskins wrote a Health Services Request (HSR) stating that he had migraine headaches, which he believed caused him to periodically black out. (ECF No. 22, ¶ 21.) Because the blackouts were preceded by dizziness and he had fallen and hit his head in the past, he requested that he be assigned to a bottom bunk. (*Id.*) Two days later, on January 6, 2023, non-defendant Nurse Jessica Hosfelt

2

completed a Special Needs Evaluation form requesting a lower bunk restriction for Hoskins. (*Id.*, ¶ 25.) In describing Hoskins's need, she wrote, "Claims of Migraines with 'Black Outs' and falls. No incident reports noted for falls. All fall claims self-reported." (*Id.*, ¶ 27.) She also noted that until May 2021 Hoskins had a low bunk restriction but it was discontinued at the end of May 2021. (*Id.*, ¶ 28.)

Hoskins began complaining about blackouts on June 17, 2021, and his medical records indicated a history of migraines. (ECF No. 22, ¶ 28.) Hoskins continued to request a low bunk restriction in June 2021 and August 2021, but both times they were denied. Hosfelt further noted that Hoskins has been consistently complaining of blackouts and falls and had been seen by Health Services on numerous occasions claiming injury from the falls. (*Id.*) However, "no abnormal findings" were ever noted or described. (*Id.*) Hosfelt concluded her report by stating, "Per guidelines listed below, [Hoskins] does not directly qualify for this restriction, which is the rationale of previous denials. [Hoskins] would like to be reconsidered as he feels he is a safety risk due to increased blackouts causing dizzy spells and falling." (*Id.*, ¶ 29.)

The guidelines which Hosfelt referenced were the "Bureau of Health Services Policy and Procedures, HS P/P 300:07 and Appendix 1 Restrictions/Special Needs. (ECF No. 22, ¶ 30.) This policy lists the following criteria for a prisoner to be eligible for a low bunk restriction:

- Acute injury (temporary restriction of 6 weeks or less). Does not require committee/nurse review and can be authorized by a nurse or prescriber.
- Significant functional limitations in mobility secondary to arthritis, musculoskeletal disorders, or neurological

3

Case 2:23-cv-00346-WED    Filed 09/06/24    Page 3 of 10    Document 35

- disorders (can be permanent if their condition is not expected to improve); committee/nurse review.
- Significant symptomatic cardiovascular disease (can be permanent if their condition is not expected to improve); committee/nurse review.
- Obesity—BMI greater than 40, and significant mobility issues present; committee/nurse review.
- Elderly: > 65 years old, can be permanent; committee/nurse review.
- Postoperative (temporary restrictions based on type of surgery for 2 months or less); temporary restriction does not require committee review and can be authorized by a nurse or prescriber.
- Seizure diagnosis (active seizure diagnosis on medications, not remote history that requires no treatment); committee/nurse review.
- Pregnancy (20 weeks or greater gestation); committee/nurse review.
- Blindness; committee/nurse review.

(*Id.*, ¶ 31.)

On January 12, 2023, the SNC reviewed and decided Hoskins's request for a low bunk restriction. (ECF No. 22, ¶ 32.) The SNC primarily relied on Hosfelt's report to make a decision. (*Id.*, ¶ 33.) Even though Haseleu had the ability to share information from Hoskins's medical records to aid in the decision, she decided not to. (*Id.*, ¶ 38.) Nor did she review Hoskins's medical chart before the meeting. (*Id.*) The SNC denied Hoskins's request because he did not meet any of the criteria listed in the Bureau of Health Services Policy. (*Id.*) The defendants state that they "must abide by BHS Policy #300:07."

Hoskins asserts that his tendency to black out is a neurological disorder, so he qualifies for a low bunk restriction under the policy. (ECF No. 29 at 4.) Back in January 2021, Hoskins was sent to the emergency room because he blacked out. (ECF No. 22, ¶ 47.) At that time he was diagnosed with "acute intractable headache,

4

unspecified headache type." (*Id.*) On February 24, 2021, he was examined by an offsite neurologist, but the neurologist did not make a diagnosis. (*Id.*, ¶ 50.) On March 12, 2021, Hoskins again went to the emergency room because he fell and was diagnosed with a headache. (*Id.*, ¶ 51.)

Between March and November 2021 Hoskins underwent diagnostic tests but at most was diagnosed with "headaches." (ECF No. 22, ¶¶ 52-53.) On November 19, 2021, Hoskins was seen by non-defendant neurologist Dr. Gu Xian, who concluded that Hoskins was "probably experiencing hemicrania." (*Id.*, ¶ 54.) "Hemicrania is a rare form of headache that brings on severe throbbing and claw-like pain usually on one side of the face near the eye and occasionally around the back of the neck." (*Id.*, ¶ 55.) The defendants state that hemicrania does not cause blackouts. (*Id.*, ¶ 56.)

Hoskins agrees that hemicrania itself is not causing his blackouts, but states that Dr. Xian informed him that the pain Hoskins experiences near his temple causes his brain "to go into overdrive," which causes the brain to shut down, which may cause blackouts. (ECF No. 29 at 2.) Hoskins also notes that Dr. Xian recommended a low bunk restriction for him and that hemicrania is a neurological disorder. (*Id.* at 3.) According to Hoskins, had Haseleu reviewed his medical records and shared these findings with the SNC, they would have found that he meets the policy criteria for a low bunk restriction. (*Id.*)

On February 8, 2023, Hoskins blacked out while on the top bunk and fell and hit his head. (ECF No. 29 at 3.) Hoskins was seen in HSU two days later for a bump on his head, although it is unclear from the record what treatment he received.

5

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'"

6

*Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Hoskins claims his Eighth Amendment rights were violated when the SNC denied his low bunk restriction. A prison official violates the Eighth Amendment when "he realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). In the case of the actions of a Special Needs Committee, a plaintiff must show that "the members' decisions were made with either bad intent or in a way that substantially deviated from accepted medical standards. *Luchinski v. Moore*, Case No. 24-cv-457-bhl, 2024 WL 3442402 at *3 (E.D. Wis. July 17, 2024) (citing *Brown v. Kelly*, Case No. 19-cv-1761-bhl, 2020 WL 7427060 at *3-4 (E.D. Wis. Dec. 18, 2020); *Acosta v. Barter*, Case No. 20-C-795, 2020 WL 5057758 at *4-5 (E.D. Wis. Aug. 27, 2020)). Merely denying a special needs request is insufficient to demonstrate a claim of deliberate indifference. *Id.*

Hoskins fails to demonstrate that the SNC denied his low bunk restriction either with bad intent or in a way that deviated from accepted medical standards. He argues that the SNC should have relied on his medical records, in addition to Hosfelt's report, and had they done so they would have approved the low bunk restriction. But he offers no evidence to support this assertion, so at best it is mere speculation, which is not enough to defeat a summary judgment motion. *See Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While a non-movant "is entitled . . . to all

reasonable inferences in her favor, inferences that are supported by only speculation and conjecture will not defeat a summary judgment motion.")

Even if it was not speculation, the SNC's failure to review Hoskins's medical records, simply relying on Hosfelt's report, amounts to nothing more than negligence, which does not support a finding of deliberate indifference. *See Jones v. Stadtmueller*, Case No. 19-cv-106-wmc, 2024 WL 983361 at * 11 (W.D. Wis. Mar. 7, 2024) (finding that the Special Needs Committee's failure to review other evidence of the medical condition outside of a one-page report amounts only to negligence).

Hoskins also argues that the SNC disregarded a 2021 recommendation for a low bunk restriction from his neurologist, Dr. Xian. Disregarding such a recommendation would amount to deliberate indifference only where a plaintiff can show that failing to follow the recommendation was a significant departure from accepted medical practices. *Id*. Where declining to follow a recommendation is simply a "disagreement between two medical professionals, without more, [it] does not establish an Eighth Amendment violation." *Id*. (quoting *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)). Hoskins does not offer evidence that the SNC's failure to follow Dr. Xian's recommendation amounted to a significant departure from accepted medical practices.

The SNC's refusal to authorize a low bunk restriction "was based on professional medical judgment." There is no evidence to suggest that Hosfelt's report, upon which the SNC relied, was made in bad faith or outside accepted medical standards. *Acosta*, 2020 WL 5057758 at * 5. Additionally, the non-medical members of the SNC were entitled to rely on Hosfelt's and Haseleu's judgment as medical staff. *Id*.

8

(quoting *Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010). No reasonable factfinder could conclude that the SNC's actions amounted to deliberate indifference to Hoskins medical needs. Summary judgment is granted in favor of the defendants.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. Because the court finds in favor of the defendants on the merits, it need not address their argument that they are entitled to qualified immunity. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 20) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil

9

Case 2:23-cv-00346-WED    Filed 09/06/24    Page 9 of 10    Document 35

Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 6th day of September, 2024.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge